Grace Rhodehouse Barberena (OSB No. 261992)
grace@youtzvaldez.com
Shane Youtz
shane@youtzvaldez.com
Stephen Curtice
stephen@youtzvaldez.com
YOUTZ & VALDEZ, P.C.
Albuquerque, NM 87102
(505) 244-1200
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| OREGON FEDERATION OF NURSES AND HEALTH PROFESSIONALS, LOCAL 5017, AFT, AFL-CIO,<br><br>Plaintiff, | Case No.: 26-cv2550 |
| v. | COMPLAINT FOR BREACH OF CONTRACT AND INJUNCTIVE RELIEF |
| KAISER FOUNDATION HEALTH PLAN, INC., and KAISER FOUNDATION HEALTH PLAN OF THE NORTHWEST,<br><br>Defendants. | |

COMES NOW Plaintiff, Oregon Federation of Nurses and Health Professionals, Local 5017, AFT, AFL-CIO ("OFNHP" or "the Union"), by and through the undersigned, and for Complaint for Breach of Contract and Injunctive Relief against the above-named Defendants, alleges as follows:

**Parties, Venue and Jurisdiction**

1. Plaintiff is a labor organization as that term is defined in 29 U.S.C. § 152. It is a local chartered body of the American Federation of Teachers, AFL-CIO. It is a party to a "National Agreement" with Defendant Kaiser Foundation of Hospitals, and multiple "Local Agreements" with Kaiser Foundation Health Plan of the Northwest.

2. Defendant Kaiser Foundation Health Plan, Inc. ("Kaiser National" or "KP"), is a corporation with its principal place of business in Oakland, California. Kaiser National is an employer in an industry affecting commerce as defined in 29 U.S.C. § 152(2). Kaiser National transacts business in Oregon through its subsidiary, Defendant Kaiser Foundation Health Plan of the Northwest.

3. Defendant Kaiser Foundation Health Plan of the Northwest ("Kaiser NW") is a domestic Oregon non-profit corporation, principally located in Portland, Oregon. It is an employer in an industry affecting commerce as defined in 29 U.S.C. § 152(2).

4. This action arises out of collective bargaining agreements between Plaintiff and Defendants. This Court has subject matter jurisdiction pursuant to Section 301 of the Labor Management pursuant to Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, and 28 U.S.C. § 1331.

5. The acts complained of herein either were committed within the District of Oregon, or have their principal effects therein. Venue is proper within this District pursuant to 28 U.S.C. § 1391.

**General Factual Allegations**

6. Relevant to this dispute, the Union represents two different bargaining units of employees of Defendants in the Northwest: Professional Employees and Technical Employees.

7. Specifically, this dispute involves two classifications of employees represented by OFNHP: RN Care Coordinators, in the Professional Bargaining Unit, and Paramedic Support Agents, in the Technical Bargaining Unit. Both classifications perform care management / coordination for patients of Defendant Kaiser NW who are receiving treatment in hospitals outside of the Kaiser National network anywhere in the country, and have been doing so for over a decade. They work remotely from home and have been doing so since prior to the COVID-19 outbreak.

8. OFNHP is a member of the Alliance of Health Care Unions, which is a collection of 23 national and local labor unions representing approximately 60,000 employees of the various Kaiser Permanente entities nationwide. Through that Alliance, it was party to a 2021 "National Agreement" with various Kaiser entities, including Defendants.

9. That National Agreement contains express provisions limiting the ability of Defendants to subcontract work performed by OFNHP's bargaining unit employees. Specifically, Section 1.K.4 of that National Agreement provides: "The Parties reaffirm a Partnership presumption against the future subcontracting of bargaining unit work." The National Agreement incorporated a Memorandum of Understanding Regarding Subcontracting. That MOU provides, in relevant part, that "the National Agreement reaffirmed a partnership presumption against future subcontract of bargaining unit work because it does not support the fundamental relationship between the parties." The MOU defines bargaining unit work as: "Work currently performed by the bargaining unit employees anywhere in the Region." It further provides that "[p]artnership bargaining unit work will not be subcontracted except as described in extraordinary circumstances above."

10. OFNHP is a party to a March 12, 2026, Memorandum of Understanding with Defendants, which finalized the local negotiations for the "Local Agreements." As part of that MOU, the parties agreed that "All language in the 2021 National Agreement addressing mandatory

subjects of bargaining will move to local contracts." This included the provisions in the National Agreement relating to subcontracting. The parties are still in the process of finalizing the resulting Local Agreements, but the provisions regarding subcontracting from the National Agreement remain binding upon Defendants.

11. Both the PRO contract and Tech Contract are the substantively identical for both relevant CBA Articles in the respective CBAs; there may exist minor language differences in the articles between the two CBAs. Section 3(D) of the Pro agreement provides:

> 1. KFHP employees regularly performing job responsibilities customarily performed by Bargaining Unit employees will be subject to all the Articles of this Agreement.
>
> 2. The parties recognize that to maintain the orderly and timely provision of patient care, it may be necessary to utilize non-Bargaining Unit employees. This practice will not result in the layoff, either partial or total, of Bargaining Unit employees and will be in compliance with licensure laws and regulations.
>
> 3. Temporary or agency personnel shall not be used to perform work customarily performed by Bargaining Unit employees, except for meeting temporary, peak workloads, emergency needs, and when all methods to deliver care with Bargaining Unit employees has not been sufficient to meet staffing needs.
>
> 4. The parties agree that because of the specialized skills performed by the Bargaining Unit, employees in supervisory positions may participate in the provision of care, which is primarily performed by Bargaining Unit employees. It is understood that this practice will not result in layoffs or erosion of Bargaining Unit positions and that supervisory positions will only be created in work groups which include at least one Bargaining Unit position.
>
> 5. When Bargaining Unit employees are unable to accommodate the volume of patient care needs, cannot provide specialized care required by a patient, or during the provision of low volume services, the employer may refer the care to outside subcontractors, provided the referral does not result in layoffs or erosion of the Bargaining Unit. If the subcontracting continues for an extended period of time due to vacancies, the parties will meet to discuss recruitment and retention actions.

12. Both Local Agreements contain mandatory grievance and arbitration provisions requiring that disputes under the agreements ultimately be submitted to arbitration.

13. Despite the restrictions on subcontracting and laying off bargaining unit employees quoted above, Defendants have subcontracted the work of RN Care Coordinators, in the Professional Bargaining Unit, and Support Agents, in the Technical Bargaining Unit.

14. Defendant KP National created a new National Care Coordination Center ("NC3") in Duluth, Georgia. Through a series of developments over time, Defendants have transferred bargaining unit work being performed by RN Care Coordinators and Support Agents in Oregon to non-represented employees of NC3 in Georgia.

15. As the situation evolved, the Union timely filed grievances regarding the transfer of bargaining unit work out of the bargaining unit as described in the following paragraphs.

16. On January 8, 2026, the Union filed a class-action grievance (KPRO335 and KPTech0511) for both units. That grievance alleged, generally, that the Union became aware in late December 2025 that NC3 staff had been taking on and taking over work from members of both bargaining units in violation of Article 3(D) of the Local Agreements. It sought as a remedy: "Immediate stop to all Bargaining Unit work being done by non-bargaining unit members and engage with OFNHP regarding Bargaining Unit work and anything that could impact Bargaining Unit work or OFNHP's members." Kaiser NW denied the grievances. The Union requested the matter be moved to mediation; mediation has not occurred.

17. OFNHP filed a second class-action grievances on April 27, 2026, covering both bargaining units in one grievance, addressing ongoing and expanding interference from the violations in the January 8, 2026, grievance. It sought as a remedy: "Remove from OFNHP members' workflows all NC3 interventions and begin partnership engagement with OFNHP regarding a clearly defined objective so that the parties can work towards a goal that reflects patient centered values, immediate stop to all Bargaining Unit work being done by non-bargaining unit

members whether human or non-human, and engage with OFNHP regarding Bargaining Unit work and anything that could impact Bargaining Unit work or OFNHP's members, and any and all other remedies to make grievant and contract whole." Kaiser NW did not respond to this grievance, and the Union escalated them to the new optional Step 3 process contained in the new Local Agreements. Kaiser NW requested, and the Union agreed, to hold them in abeyance pending a national notification call that was being scheduled.

18. That national notification call occurred on June 15, 2026. There, KP National notified the unions (including OFNHP) of the decision to centralize non-core, non-plan care coordination to the NC3, which would be "fully operational" in October 2026.

19. OFNHP representatives attended an information session in Denver, Colorado on August 19-20, 2026. At this information session KP National indicated—for the first time in this whole process—that they intended to "close the Departments by the end of the year."

20. On September 2, 2026, the Union filed separate grievances for both bargaining units (KPPro0371 and KPTech0539), following KP National's announcement that it intended to "close the departments" and move bargaining unit work to Georgia to be performed by non-bargaining unit employees. Those grievances alleged: "Employer has removed, and is removing, bargaining unit work from the OFNHP Tech bargaining [Pro] unit by transferring the work of the RTMC Support Agents to the National Care Coordination Center (NC3) in Georgia, and by announcing the closure of the department. The work has not been discontinued. The work of these employees and the Bargaining Unit is being and/or will be performed by employees outside of the bargaining unit. The employer has stated its intention to close the departments - though has provided inconsistent information - and has announced a decision to outsource the work in violation of substance and process articulated in our Agreements. And, it has conducted the work

of setting up the outsourced location using temporary personnel." Kaiser NW denied the grievances, and has refused to consolidate them for a single arbitration hearing.

21. Kaiser NW formally issued RIF notices to the affected departments on or about November 2, 2026, for an effective date of January 12, 2027, "due to consolidation of this function into a national shared service." The Union filed separate grievances for the Professional and Technical bargaining units on November 13, 2026. These grievance sought as a remedy: "1) Cease and desist all assignment of work normally performed by RTMC/VH Care Coordinators to non-BU EEs, and 2) Rescind the Reduction in Force notification of 11/02/2026, and 3) discontinue any actions or plans that would result in the assignment of Bargaining Unit work to non-BU EEs, and 4) Make whole all EEs for lost extra shifts, including all applicable wages and premiums, and 5) reimburse the Union for all dues lost as a result of the removal of work from the BU or the failure to hire staff such that the work could be performed by BU EEs, and 6) Comply with all provisions of the CBA and related agreements, and 7) any and all other remedies to make grievant and contract whole."

22. Throughout the grievance process, Kaiser NW has maintained that the decision had been made by Kaiser National, and that they had no control over the outcome.

23. All of the foregoing grievances await scheduling for arbitration. The Union requested—but Defendant Kaiser NW refused—to process them on an expedited basis.

24. The new Local Agreements—still being finalized, but binding on the parties—require the parties to create a new permanent panel of ten arbitrators to adjudicate grievances. Four are to be appointed by the Union, four are to be appointed by Employer, and the last two by mutual agreement and/or FMCS appointment, with separate panels for each unit. The Union first

approached Kaiser NW about this process on or about October 9, 2026, but to date the process has not been completed, as a result of Defendants' intentional delay.

25. As a direct and proximate result of Defendants' violations of the Local Agreements and refusal to consolidate or expedite the arbitration requests, Defendants are effectively refusing to arbitrate the dispute in time to prevent the outsourcing of bargaining unit work.

26. Without a preliminary injunction to preserve the status quo until the case is arbitrated, the employees currently employed in the relevant departments will be unjustly harmed including eventual termination.

27. As explained herein, Defendants have previously executed a plan to effect movement of the work to Georgia despite the fact that such action violates its agreements with labor unions. Another member of the Alliance of Healthcare Unions is United Food and Commercial Workers, Local 7R, out of Colorado. It has twice arbitrated similar attempts to outsource work under their local agreements with Kaiser Foundation Health Plan of Colorado ("Kaiser Colorado"). In each instance, the arbitrator found a violation of the local agreement, ordered the employer to cease and desist from engaging in future violations of the subcontracting language, but refused to undo the subcontracting decision and order a restoration of the status quo ante regarding bargaining unit employees performing bargaining unit work.

28. In the first case, involving the use of a contractor Dispatch Health, the arbitrator ordered Kaiser Colorado to "cease and desist from future violations of Article 1, Section 4 [the subcontracting provision] of the labor agreement[,]" but did not order Kaiser Colorado to stop utilizing the services of Dispatch Health moving forward. Kaiser Colorado continues to utilize Dispatch Health.

29. The second case involved the subcontracting the Mail Order Pharmacy and Pharmacy Automated Refill Center operations to affiliated Kaiser entity in Southern California. The arbitrator determined that, even though an affiliated entity, such a move constituted subcontracting in violation of the local agreement. The arbitrator ordered Kaiser Colorado to "cease and desist from further violations of the subcontracting provision contained in Article 1, Section 4 of the 2018 CBA[,]" but denied Local 7R's requested remedy requiring restoration of the MOP and PARC work to Colorado. The Mail Order Pharmacy and Pharmacy Automated Refill Center work remains with the Sothern California Kaiser-affiliated entity, and has not returned to UFCW Local 7R's bargaining unit.

30. These two arbitration decisions demonstrate that, absent a preliminary injunction preserving the status quo pending arbitration of the subcontracting/transfer of bargaining unit work dispute, <u>that work will not return to OFNHP's bargaining unit, even if the arbitrator determines Defendants violated the National and/or Local Agreements.</u>

**Count I: Breach of Contract – 29 U.S.C. § 185**

31. Plaintiff incorporates the foregoing paragraphs by reference as though set forth herein.

32. Plaintiff and Defendants are parties to a series of collective bargaining agreements (the National and Local Agreements described above).

33. The Local Agreement incorporates the subcontracting provisions of the National Agreement and contains further provisions prohibiting the transfer of bargaining unit work out of the bargaining unit, except under limited circumstances not applicable here.

34. Defendants have breached their obligations under those agreements, has transferred bargaining unit work out of the bargaining unit, and has providing notice of its intent to layoff bargaining unit employees as a result of that transfer of work.

35. As a direct and proximate result of Defendant's breaches, Plaintiff has suffered damages and is suffering irreparable harm, including but not limited to, the loss of bargaining unit work.

**Count II: Injunctive Relief – Reverse *Boys Market* Injunction**

36. Plaintiff incorporates the foregoing paragraphs by reference as though set forth herein.

37. Defendants' breach of the various agreements described above is subject to the grievance and arbitration provisions of those agreements.

38. The Union will arbitrate this dispute in accordance with those provisions.

39. However, absent an injunction preserving the status quo pending those arbitrations, the arbitral process will be rendered "a hollow formality" because the award "could not return the parties substantially to the *status quo ante*." *Lever Brothers Co. v. International Chemical Workers, Local 217*, 554 F.2d 115, 123 (4th Cir. 1976).

40. In such circumstances, and despite the provisions of the Norris-LaGuardia Act, a preliminary injunction may be issued by this Court.

41. For the reasons set forth in the contemporaneously-filed Petition for Preliminary Injunction, all of the elements for the issuance of a preliminary injunction have been met in this case.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully prays for an order of this Honorable Court:

A. Compelling Defendants to submit this matter to arbitration as required by the applicable agreements described above;

B. Granting preliminary injunctive relief requiring Defendants to cease transferring, assigning or permitting to be assigned bargaining unit work performed by OFNHP-represented employees to non-bargaining unit employees, including but not limited to those employees at the NC3 facility, pending arbitration and resolution of the parties' dispute on the merits;

C. Awarding Plaintiff its reasonable costs, litigation expenses, and attorneys' fees to the extent authorized by law; and

D. Such other and further relief this Court deems just and proper, including any further injunctive relief as may be required.

Dated: November 20, 2026

Respectfully submitted,

*/s/ Grace Rhodehouse Barberena*

Grace Rhodehouse Barberena (OSB No. 261992)
grace@youtzvaldez.com
*Counsel for Plaintiff*